### M. F. Price et al. v. John F. Burns et al.

1.  CONTRACTS—*Their Validity to be Determined by the Law of the State Where They Are to be Performed.*—Where a contract is made in Iowa for the sale of a gambling device to be delivered in this State, the validity of the sale and promise to pay are to be determined by the laws of this State.

2. PRACTICE—*What is Admissible Under the General Issue.*—The laws of this State concerning gambling are prohibitive and highly penal, and transactions coming within their scope are not lawful. Evidence that a sale of a gambling device and the promise and undertaking to pay for it, upon which a suit is brought, was unlawful, is admissible under the general issue.

3. SLOT MACHINES—*Sales of, Unlawful Under the Statutes of This State and Ordinances of Chicago.*—Under the ordinances of the city of Chicago, as well as the statutes of this State, the sale of slot machines is unlawful.

Assumpsit, to recover the price of a gambling device. Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the March term, 1901. Affirmed. Opinion filed April 4, 1902.

This was an action of assumpsit to recover the price of a slot machine music box with a gambling attachment.

The general issue only was pleaded by the defendant.

Under this the defendant introduced evidence showing that the machine was a gambling device.

FERGUSON & GOODNOW, attorneys for appellants.

JOSEPH P. EAMES, attorney for appellees; CHARLES C. ARNOLD, of counsel.

MR. JUSTICE WATERMAN delivered the opinion of the court.

The testimony, the plaintiffs insist, was not admissible under the plea of the general issue.

Appellants also insist that the contract was made in Iowa, and if valid there, was everywhere.

The contract was made to be performed, and the machine was delivered in Illinois. The validity of the sale and the promise to pay are, therefore, to be determined by the law of this State.

The laws of the State of Illinois concerning gambling are not in any respect merely regulatory or designed to produce revenue. On the contrary they are prohibitive and highly penal. See Smith v. Manhood, 14 Exchq. 452; Douthart v. Condon, 98 Ill. App. 487.

Such being the case, transactions coming within their

scope are not lawful; and evidence showing that a sale, promise or undertaking upon which suit is brought was unlawful, is admissible under the general issue. (1 Chitty on Pleadings, 476, 477, 479, 480.) The consideration of the promise as well as the validity thereof is thus directly attacked. "*Ex turpi causa non oritur actio*." Parsons on Contracts, Vol. 11, p. 673, 746, 6th Ed.

There was, upon the trial, evidence tending to show that the machine was not such as was ordered; and also the following: A defendant testified:

"In my first letter I wrote them that the machine did not live up to the verbal contract that their agent had told me about, and that I would like them to come and remove it. I waited for them to come and remove it, or for an answer to the letter. About two weeks passed. I wrote them that if they wanted their machine they had better call and get it, as the city authorities had ordered me to remove it from the premises, on account of its being a gambling device, a nickel-in-the-slot machine.

"The machine is a nickel-in-the-slot machine, and has a box on the side of it which gives out little balls; a white ball gives the patron for his five cents, music; the blue ball gives one cigar, the red ball two cigars. They also had a heavy nickel-plated ball in the circular place on the side, which would give a bottle of wine. There is a circular appliance on the side turned with a crank; if the nickel is not put in, it doesn't work. You turn a little crank and it revolves, and a little ball comes out, and you can get it cashed for what is specified on the card. There is a graded card on the side of the machine which denotes just what it is; the card was on there when I got the machine. This is the card that was on the machine. I signed the contract previous to getting the machine, and saw the card only when they delivered the box. This card was also alongside of the slide that received the nickels at the time it came to the store, reading as follows:

> Drop a nickel
> In the slot.
> Turn lower
> Crank slowly
> Once around
> To right.
> White ball pays music.

Price v. Burns.

> Black ball pays one cigar.
> Blue ball pays two cigars.
> Red ball pays three cigars.

Reverse side:

> Drop a nickel
> In the slot.
> Turn lower
> Crank slowly
> Once around
> To right.
> White ball pays music.
> Black ball pays one cigar.
> Blue ball pays two cigars.
> Red ball pays three cigars.
> Silver ball pays bottle of wine.

Upon putting a nickel in the slot the music begins to play, and one of these balls falls out. The white ball is not cashed; the black ball gets a cigar, the blue ball two cigars, the red ball three cigars, and the silver ball a bottle of wine. The nickels are taken out by a door opened with a key and lock; there were two keys—we had both.

The machine can not work except it operates this ball device. They must both be in running order. One nickel operates both, and it operates a little round *gambling device;* one can't work without the other. It is the nickel in the slot starts the music. I don't know whether you can put a nickel in there and have the music without the cigar attachment. I know nothing at all about the mechanical device; all I know is that they both work at the same time. I have seen my patrons put in nickels and the two worked together. I never worked the machine without running the cigar attachment; it wouldn't work no other way. The cigars were bought in company with the music; I didn't get any profit. I had absolute control of all the money that came in; I took it out of the machine; the money was supposed to go in reserve to pay for the machine. I have some of the money taken out of the machine in my safe. The cigars were given to the customers, if they were entitled to them; were cigars that I bought in my business. I had to pay out a cigar about two-thirds of the time that nickels were put into the machine."

The defendants also introduced the following city ordinance:

" Section 709. Possession of Gambling Device.—No

person shall bring into the city of Chicago, or have in his, her or their possession in the said city for the purpose of gaming, any table, thing or device of any kind or nature, whereon or with which money or any other thing of value may in any manner be played for, under a penalty of not less than twenty-five dollars nor more than one hundred dollars for each and every offense."

Under the city ordinance, as well as under the statutes of this State, (Chapter 38, Sections 127, 128, 133, 137f, 137g, 137h, Hurd's R. S., Ed. 1901,) the sale of this machine to appellees, saloonkeepers, was unlawful, and the court properly found for the defendants.

If appellants have not received back their machine it is their own fault. Appellees are not shown to be keeping the box against the will of appellants.

The judgment of the Superior Court is affirmed.